NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HAYWOOD GANDY, | : | |
| Plaintiff, | : | Civil No. 06-21 (AET) |
| v. | : | **MEMORANDUM OPINION** |
| CORRECTIONAL MEDICAL SERVICES, INC., et al., | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.

This matter is before the Court on State Defendants Devon Brown and Thomas Farrell's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and, in the alternative, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [16]; and Defendant Lawrence Donkor's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [23]. The Court has decided the State Defendants' motions based upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78. The Court does not decide Defendant Donkor's motion at this time, as Plaintiff asserts that he never received notice of Defendant Donkor's motion. For the reasons stated below, State Defendants Brown and Farrell's Motion to Dismiss is denied and their Motion for Summary Judgment is granted.

BACKGROUND

Plaintiff Haywood Gandy is currently serving a twenty-three-year prison term at the Southwoods State Prison in Bridgeton, New Jersey ("SWSP"). On February 7, 2003, while

incarcerated at the New Jersey State Prison ("NJSP") in Trenton, Plaintiff injured his shoulder. He was brought to the infirmary and was seen by Soon Anderson, R.N., who subsequently ordered that Plaintiff be taken to the emergency room ("ER") at St. Francis Medical Center ("SFMC"). After discharge from the ER, Plaintiff was seen by Dr. George Achebe, who prescribed pain medications and a treatment regimen. On February 10, 2003, Dr. Raymond Tagle issued a referral for an orthopaedic consultation.

On February 13, Plaintiff was seen by Dr. Miller, who diagnosed a right anterior shoulder dislocation, and prescribed further treatment, including an instruction to Plaintiff that he keep his arm in a sling for three to six weeks. Plaintiff also was scheduled for physical therapy and x-rays. On February 14, Dr. Tagle prescribed Darvocet for ten days. On March 20, Plaintiff was seen by Dr. Glick, who opined that Plaintiff was progressing well; Dr. Miller also ordered an x-ray of Plaintiff's shoulder. On April 24, 2003, Plaintiff was again evaluated and his condition was found to be improved, whereupon scheduled treatment was discontinued.

On December 17, 2003, Plaintiff again injured his right shoulder while reaching for an object in his cell. The next day, Plaintiff was seen by Dr. Miller, who prescribed medication and physical therapy, and ordered Plaintiff to wear an arm sling and limit his movement. Three days later, Plaintiff returned to the NJSP clinic for pain in his shoulder. Dr. Achebe prescribed medication and ordered Plaintiff to avoid work and recreation. Plaintiff's pain continued, and on December 22, Plaintiff returned to the clinic where Dr. Paul Talbot diagnosed a right shoulder re-sprain and a possible rotator cuff tear. Dr. Talbot prescribed additional medications, ordered an MRI scan, and instructed Plaintiff to return in two months. On February 19, 2004, Plaintiff was referred to physical therapy and discharged on the same day.

During this period, Plaintiff also complained of severe headaches, nausea and photophobia, and was evaluated by Dr. Shah on February 16, 2004, and by Dr. Talbot on February 19, 2004. Plaintiff received a CT scan on March 4, 2004, which was normal. Nonetheless, Plaintiff continued to seek follow-up treatments for headaches from March to June of 2004. During this period, Plaintiff did not complain of shoulder pain.

On October 2, 2004, Plaintiff sought treatment for shoulder and arm pain, stemming from a purported dislocation that Plaintiff reset himself. A licensed practical nurse ("LPN") confirmed that there was no present dislocation and did observe that Plaintiff appeared to be in pain. The LPN notified Dr. Reddy, who prescribed Tylenol #3,[1] and provisionally approved x-rays. Later that day, Plaintiff returned to the clinic, complaining that he could not raise his arm, and was sent by Dr. Reddy to SFMC for x-rays and evaluation. The x-rays did not reveal any fracture or dislocation.

On October 4, 2004, Plaintiff returned to the clinic, complaining that he had, once again, dislocated his shoulder. Dr. Donkor diagnosed a probable resolved dislocation and prescribed pain medication. He also ordered another MRI and follow-up visit. Later that evening, Plaintiff was found on the floor of his cell, complaining of severe pain. He was admitted to the clinic and treated there for pain with Darvocet. Dr. Achebe examined Plaintiff and found no dislocation, and authorized Plaintiff's discharge. Plaintiff received an MRI on October 9, 2004. This revealed a deformity of the posterolateral humeral head compatible with a Hill-Sachs compression fracture related to prior anterior dislocation; an anterior, inferior labral tear with deformity of the interior

---

[1] Tylenol #3 contains 300 mg. of acetaminophen and 30 mg. of codeine, a narcotic analgesic.

glenoid rim, suggesting a chronic Bankart lesion; and a Type 1 acromion process without a subacromial spur.

Between October 2004 and January 2005, Plaintiff visited the clinic for headaches, and was seen by Dr. Tahmoush, who ordered an MRI of Plaintiff's head on October 15, 2004.

On January 22, 2005, Plaintiff once again claimed to have dislocated his shoulder; he was treated for pain with Darvocet, his arm was immobilized and he was transported to SFMC. After his discharge, he was again advised to restrict movement, put on pain medication and admitted to the clinic infirmary for observation, where he remained until February 23, 2005. On April 7, 2005, Plaintiff received an orthopaedic consultation from Dr. Manar Hanna, who advised continued immobilization, pending Plaintiff's scheduled surgery for repair of the lateral anterior capsule. On April 22, Plaintiff again returned to the clinic, complaining of a dislocation. Plaintiff was offered, and refused, Motrin. On April 28, Plaintiff again complained of pain and requested medication, and again sought medication stronger than Motrin. Nurse Skinner then referred Plaintiff to the medical staff for evaluation. On April 29, 2005, Dr. Jeffrey Pomerantz examined Plaintiff, issued a new prescription for Tylenol #3, and ordered an orthopaedic consultation.

Plaintiff sought treatment and pain medication on June 24, and was prescribed Tylenol #3 and Motrin on June 27. On July 14, he again complained of pain, and on July 19, Dr. Hanna examined Plaintiff and ordered that Plaintiff's surgery be expedited. This surgery was conducted on September 28, 2005. After surgery, Plaintiff was admitted to the clinic infirmary where he was medicated for pain, ordered to keep the arm and shoulder immobilized for six weeks, and scheduled for physical therapy after six weeks. He was discharged on September 30, 2005. At a follow-up visit on October 12, 2005, Plaintiff complained of pain and stiffness but denied other

symptoms. Examinations and physical therapy continued until Plaintiff's transfer to SWSP on January 4, 2006.[2]

Plaintiff brings this pro se Complaint pursuant to 42 U.S.C. § 1983, alleging that various persons at SWSP, the New Jersey Department of Corrections, and the physicians and medical staff from Correctional Medical Services ("CMS") (together, "Defendants") violated his constitutional rights by denying him timely medical care. Specifically, he alleges that Defendants were deliberately indifferent to his medical condition in violation of his constitutional rights under the Eighth Amendment. Plaintiff further alleges that Defendant CMS breached its contract with the Department of Corrections, and that, as a result of its breach, Plaintiff, a third-party beneficiary to the contract between CMS and the Department of Corrections, was subjected to unnecessary pain. Plaintiff seeks compensatory and punitive damages, and a permanent injunction ordering Defendants to comply with treatment plans.

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court reviewed the Complaint and ordered that the Complaint be filed. After discovery, dispositive motions from State Defendants Devon Brown and Thomas Farrell, and from Defendant Lawrence Donkor followed.[3]

---

[2] The State Defendants admit denying Plaintiff's request for Tylenol # 3 once. (Brown and Farrell's Br. at 14.) The State Defendants allege that Plaintiff's request was denied because the medical staff learned that Plaintiff was "stockpiling" medications. Id. Plaintiff was given Naprosyn instead. Id.

[3] Plaintiff was ordered to file an opposition brief by January 19, 2007; when no opposition brief was filed, the Court deemed the motions to be unopposed and dismissed the case. Plaintiff's opposition brief was received two days later. Because the Plaintiff had previously informed the Court of his difficulties in complying with the briefing schedule, had consistently made good faith efforts to comply with same, and for good cause shown, this Court reopened the case and ordered Plaintiff's opposition papers filed. Later, Plaintiff filed a motion to vacate the dismissal order pursuant to Fed. R. Civ. P. 59(e) and 60(b)(1). Plaintiff's motion is moot, except in that Plaintiff denies receiving notice of Dr. Donkor's motion for summary

DISCUSSION

A.     Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Defendants Brown and Farrell first ask this Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), all allegations in the complaint must be accepted as true and viewed in the light most favorable to the plaintiff. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). A court may dismiss a complaint under this rule if it appears beyond a doubt that no relief could be granted under any set of facts which could be proven consistent with the allegations. In re Party City Sec. Litig., 147 F. Supp. 2d 282, 297 (D.N.J. 2001).

This Court has already reviewed the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and permitted the Complaint to be filed. Because the standard of review set forth in 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) is identical to the Rule 12(b)(6) standard, consideration of the State Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) would be redundant, and the motion is thus denied.[4]

B.     Motion for Summary Judgment Under Fed. R. Civ. P. 56

Defendants also seek summary judgment pursuant to Rule 56. A party seeking summary

---

judgment. Thus, the Court will assume the truth of that assertion, and will not decide Dr. Donkor's motion at this time. Rather, the Court will require the Clerk of the Court to provide Plaintiff with another copy of Dr. Donkor's motion. Plaintiff may file an opposition to Dr. Donkor's motion no later than Friday, April 20, 2007. Dr. Donkor may file a reply within seven days of service of Plaintiff's opposition.

[4]     The State Defendants argue that, inter alia, claims against the State Defendants in their official capacities are barred by the Eleventh Amendment, therefore the Court should dismiss this action as against the State Defendants in their official capacities pursuant to Rule 12(b)(6). Because the Court is granting summary judgment in this matter, the Rule 12(b)(6) motion is moot.

judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing motions for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. See InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159-60 (3d Cir. 2003). The moving party has the burden to show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Big Apple BMW v. BMW of North America, Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). An issue is "genuine" if a reasonable jury could hold in the movant's favor on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The movant need not disprove the opponent's claim, but must still demonstrate the absence of any genuine issue of material fact. Big Apple BMW, 974 F.2d at 1362-63. Once the moving party meets its burden, the non-moving party must adduce evidence showing that a genuine issue exists. Id. To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson, 477 U.S. at 252. If the non-moving party fails to make a sufficient showing establishing an element of his claim that is essential to his case, and on which he will bear the burden of proof at trial, then summary judgment is appropriate. Celotex, 477 U.S. at 322.

C.   Denial of Medical Care Claim

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-4 (1976). To prevail on a denial of adequate medical care claim, Plaintiff must show that (1) a serious medical need existed, and (2) Defendants' behavior rose to the level of "deliberate

indifference" to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Plaintiff may show a "serious medical need" by demonstrating a need (1) that "has been diagnosed by a physician as requiring treatment"; (2) that "is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) for which "the denial of treatment would result in the unnecessary or wanton infliction of pain [or] a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003).  Defendants do not controvert, and the Court so finds, that Plaintiff satisfactorily alleges that he has or had a "serious medical need."

Plaintiff must next show that Defendants were "deliberately indifferent" to that need, i.e., that the Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. Natale, 318 F.3d at 852.  Deliberate indifference may be found where a prison official either (1) knew of the need for treatment but intentionally refused to provide it; (2) delayed necessary medical treatment for non-medical reasons; or (3) prevented a prisoner from receiving needed or recommended treatment.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Medical malpractice and/or negligence do not rise to the level of deliberate indifference.  Id.  Similarly, neither subjective dissatisfaction with medical care, Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000), nor disagreement over medical care, White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990), will rise to the level of deliberate indifference.  Natale, 318 F.3d at 852.

Plaintiff has not alleged that medical care was denied, and the voluminous medical record indicates that Plaintiff received repeated evaluations for his condition, and surgery to correct the known problems.  Nor does he allege that he was ever prevented from seeking care.  Rather, Plaintiff has made only bare assertions that Defendants knew of his condition, deliberately refused

to treat it in a timely manner, and did so for non-medical reasons.

When faced with a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson, 477 U.S. at 252. Once the movant shows that there is no genuine issue of material fact, and if the non-moving party fails to make a sufficient showing establishing an element of his claim that is essential to his case, and on which he will bear the burden of proof at trial, then summary judgment is appropriate. Celotex, 477 U.S. at 322. While Plaintiff's allegations might state a *prima facie* claim for deliberate indifference under § 1983 sufficient to withstand a motion to dismiss for failure to state a claim, id., that is not the posture here. In support of their motion for summary judgment, the State Defendants have provided copious evidence, in the form of treatment records and uncontested material facts, to show that there is no genuine issue of material fact in this case. Big Apple BMW, 974 F.2d 1362-63. The burden thus shifts to Plaintiff to adduce some evidence to show that a genuine issue of material fact remains, id., yet Plaintiff has not come forward with any evidence to support his allegation that adequate care was delayed for non-medical reasons.

Plaintiff would have the Court read broadly the proscription against delaying medical treatment for non-medical reasons. See Rouse, 182 F.3d at 197. Prisoners are entitled to adequate care, not the best and most timely care possible, see Estelle v. Gamble, 429 U.S. 97, 107 (1976), therefore the Court will not entertain the notion that any delay for non-medical reasons is constitutionally suspect. In any event, Plaintiff has not put forward any creditable non-medical reason for the perceived delay in his treatment except for cost savings, which does not, without more, constitute deliberate indifference. See Caines v. Hendricks, No. 05-1701, 2006 WL 496876,

at *8 (D.N.J. Feb. 9, 2007) (citations omitted). Plaintiff's argument must fail as he did, in fact, receive an MRI and surgery, albeit far later than he would have liked.

Plaintiff attempts to rescue his case by alleging the existence of a "custom" of deliberate indifference where administrators at the highest levels do not personally act upon, or even receive, Plaintiff's complaints. While this argument is without merit (Plaintiff's own exhibits make it clear that the complaints made by him and his family members were reviewed), it would further fail because the acts that Plaintiff allegedly raised up to the highest levels (alleged indifference by Defendants to Plaintiff's pain and suffering) have not been shown to be constitutional violations.

Giving Plaintiff the benefit of every doubt, the evidence in this case shows, at most, that Defendants may have been negligent for not conducting an MRI and performing surgery sooner than they did. Negligence, if it exists and is proven, still does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 107; Rouse, 182 F.3d at 197.

## CONCLUSION

Because Plaintiff has failed to make a sufficient showing as to necessary elements of his case, summary judgment is appropriate. Celotex, 477 U.S. at 322. For the reasons set forth above, State Defendants Brown and Farrell's Motion to Dismiss is denied. State Defendants Brown and Farrell's Motion for Summary Judgment is granted. An appropriate order follows.

    s/ Anne E. Thompson    
    ANNE E. THOMPSON, U.S.D.J.

DATED:  3/29/2007