NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HAYWOOD GANDY, | : | |
| Plaintiff, | : | Civil No. 06-21 (AET) |
| v. | : | **MEMORANDUM & ORDER** |
| CORRECTIONAL MEDICAL SERVICES, INC., et al., | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.

This matter is before the Court on Defendant Lawrence Donkor's motion for summary judgment [23], and Defendant Correctional Medical Services's ("CMS") motion for summary judgment [39], both pursuant to Fed. R. Civ. P. 56. The Court has decided these motions based upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, both motions for summary judgment are granted.

BACKGROUND AND PROCEDURAL HISTORY

The Court incorporates by reference the facts of this case as set forth in its Memorandum Opinion entered on March 29, 2007, and thus, will not restate them here. The recent procedural history of this case is as follows. On January 29, 2007, the Court entered an Order granting the State Defendants' and Defendant Donkor's motions for summary judgment, noting that Plaintiff had not filed oppositions to these motions. On February 13, 2007, the Court entered an Order reopening the case, permitting Plaintiff to file oppositions to the motions, and staying the January

29, 2007 Order granting summary judgment to the State Defendants and Defendant Donkor. On March 29, 2007, the Court entered an Order granting the State Defendants' motion for summary judgment, and adjourning Defendant Donkor's motion, as Plaintiff claimed he had never received a copy of Defendant Donkor's motion. The Court granted Plaintiff an extension to file an opposition to Defendant Donkor's motion by April 20, 2007. In the interim, Defendant CMS filed a motion for summary judgment on March 6, 2007. Plaintiff sent two letters to the Court outlining his difficulty in preparing oppositions to the motions, and requested an extension. On April 24, 2007, the Court entered a letter order granting Plaintiff's request for an extension, and ordering that he file oppositions to both Defendant Donkor's and Defendant CMS's motions by Monday, May 21, 2007. On May 25, 2007, the Court received Plaintiff's oppositions.[1]

DISCUSSION

A.     Motion for Summary Judgment Under Fed. R. Civ. P. 56

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing motions for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. See InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159-60 (3d Cir. 2003). The moving party has the burden to show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). An issue is "genuine" if a reasonable jury could find in the non-moving party's

---

[1] Although Plaintiff's oppositions are out of time, and he sent them directly to chambers, not the Clerk's Office, the Court will nonetheless consider his oppositions as he is a pro se litigant, and he appears to have sent copies of the oppositions to Defendants.

favor on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The movant need not disprove the opponent's claim, but must still demonstrate the absence of any genuine issue of material fact. Big Apple BMW, 974 F.2d at 1362-63. Once the moving party meets its burden, the non-moving party must adduce evidence showing that a genuine issue exists. Id. To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson, 477 U.S. at 252. If the non-moving party fails to make a sufficient showing establishing an element of his claim that is essential to his case, and on which he will bear the burden of proof at trial, then summary judgment is appropriate. Celotex, 477 U.S. at 322.

B.   Denial of Adequate Medical Care Under 42 U.S.C. § 1983

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-4 (1976). To prevail on a denial of adequate medical care claim, Plaintiff must show that (1) a serious medical need existed, and (2) Defendants' behavior rose to the level of "deliberate indifference" to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Plaintiff may show a "serious medical need" by demonstrating a need (1) that "has been diagnosed by a physician as requiring treatment"; (2) that "is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) for which "the denial of treatment would result in the unnecessary or wanton infliction of pain [or] a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003). Defendants do not controvert, and the

Court so finds, that Plaintiff satisfactorily alleges that he has or had a "serious medical need."

Plaintiff must next show that Defendants were "deliberately indifferent" to that need, i.e., that the Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. Natale, 318 F.3d at 852. Deliberate indifference may be found where a prison official either (1) knew of the need for treatment but intentionally refused to provide it; (2) delayed necessary medical treatment for non-medical reasons; or (3) prevented a prisoner from receiving needed or recommended treatment. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Medical malpractice and/or negligence do not rise to the level of deliberate indifference. Id. Similarly, neither subjective dissatisfaction with medical care, Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000), nor disagreement over medical care, White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990), will rise to the level of deliberate indifference. Natale, 318 F.3d at 852.

C.  Defendant Donkor's Motion

Defendant Donkor argues that summary judgment of Plaintiff's 42 U.S.C. § 1983 claim against him is proper because: (1) Plaintiff cannot establish that Defendant Donkor was deliberately indifferent any serious medical need; and (2) Plaintiff cannot show there is a genuine issue of material fact for trial as to Defendant Donkor. (Def. Donkor's Br. 5.) Plaintiff argues that Defendant Donkor demonstrated deliberate indifference to his serious medical need of a dislocated shoulder by failing to "send[] Plaintiff to a hospital or medical facility [with] x-ray capability, [the] services of an anesthetist, [an] orthopedic staff and surgical facilities." (Pl.'s Opp'n to Def. Donkor's Mot. for Summ. J. ("Pl.'s Opp'n") 1.)[2]

---

[2] Although Plaintiff submitted two apparently different affidavits in opposition to Defendant Donkor's and CMS's Motions for Summary Judgment, Plaintiff's briefs in opposition are identical. Thus, the Court will refer to Plaintiff's opposition as one document.

Plaintiff has not alleged that medical care was denied, and the voluminous medical record indicates that Plaintiff received repeated evaluations for his condition, and surgery to correct the known problems. Nor does Plaintiff allege that he was ever prevented from seeking care. Rather, Plaintiff makes only bare assertions that Defendant Donkor failed to follow "the standard and correct procedure" of sending Plaintiff to a hospital for treatment of his shoulder. (Pl.'s Br. 1.)

When Defendant Donkor first saw Plaintiff on October 4, 2004, Plaintiff had just returned from St. Francis Medical Center. (Def. Donkor's Br. 6; Gandy Aff. in Opp'n to Def. Donkor's Mot. for Summ. J. ("First Gandy Aff.") 2.) In response to Plaintiff's complaints of pain, Defendant Donkor noted that the "dislocation [was] resolved," prescribed pain medication as needed, advised Plaintiff to continue using the arm sling, and scheduled him for a follow-up visit in two weeks. (Def. Donkor's Br. Ex. B.) Defendant Donkor also responded that very same day to an emergency call in Plaintiff's cell. Plaintiff again complained of extreme shoulder pain. Defendant Donkor ordered Darvocet to control the pain, transferred Plaintiff to the prison infirmary, and ordered an MRI. (Id.) Plaintiff does not dispute that Defendant Donkor provided this care, but contends that Defendant Donkor was deliberately indifferent in failing to order that Plaintiff be immediately transferred to a hospital. (Pl.'s Opp'n 3.)

Defendant Donkor next saw Plaintiff on November 15, 2004, after Plaintiff received, on or about October 15, 2004, the MRI Defendant Donkor had ordered. (Def. Donkor's Br. 7; First Gandy Aff. 2.) Defendant Donkor noted that Plaintiff was awaiting an orthopedic consultation. (Id.) Plaintiff claims that although Defendant Donkor was "aware of [Plaintiff's] need for treatment," he did not see a specialist to follow up on his MRI until April 4, 2005. (First Gandy Aff. 2.) Plaintiff's medical records show, however, that he actually received the orthopedic

5

consult on February 3, 2005. (Def. Donkor's Br. Ex. B.) On March 10, 2005, Defendant Donkor ordered a follow-up orthopedic consult, as Plaintiff was scheduled for surgery. (Id.)

Plaintiff's chief complaint against Defendant Donkor appears to be that he prescribed pain medication, transferred Plaintiff to the prison infirmary, and ordered an MRI instead of immediately transferring Plaintiff to a hospital, which Plaintiff would have preferred. (See Pl.'s Opp'n 1-3.) Plaintiff's subjective dissatisfaction and disagreement with his medical care, however, does not rise to the level of deliberate indifference. See, e.g., Natale, 318 F.3d at 852; White, 897 F.2d at 110; Andrews, 95 F. Supp. 2d at 228.

When faced with a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson, 477 U.S. at 252. Once the movant shows that there is no genuine issue of material fact, and if the non-moving party fails to make a sufficient showing establishing an element of his claim that is essential to his case, and on which he will bear the burden of proof at trial, then summary judgment is appropriate. Celotex, 477 U.S. at 322. Plaintiff has produced no evidence, other than his own assertions, that the "standard procedure" would have been to transfer him to a hospital on October 4, 2004. As Plaintiff has not established a genuine issue of material fact as to Defendant Donkor's alleged deliberate indifference, Defendant Donkor's Motion is granted.

D.   CMS's Motion

To establish CMS's liability, Plaintiff must show that a relevant policy or custom within the corporation caused the alleged constitutional violation. See Natale, 318 F.3d at 585. As stated above, the Court has determined that Plaintiff has not established a genuine issue of

material fact as to any alleged constitutional violation by Defendant Donkor.  Thus, regardless of any purported policy or custom, CMS may not be held liable as a result of Defendant Donkor's actions, as they did not cause Plaintiff any constitutional injury.  See Grazier v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003) (holding that an entity may not be liable under § 1983 unless its policy actually causes constitutional injury).

The only other medical Defendant, Dr. George Achebe, has not been served with process in this case.  As to Dr. Achebe, Plaintiff claims that he failed to use anesthesia when he re-aligned Plaintiff's shoulder on October 4, 2004.  (Pl.'s Opp'n 1.)  Even if this action could evidence deliberate indifference on Dr. Achebe's part, which the Court does not decide here, Plaintiff does not identify any policy or custom of CMS that caused Dr. Achebe to take such action.

As to CMS's policies or customs, Plaintiff would have the Court read broadly the proscription against delaying medical treatment for non-medical reasons.  See Rouse, 182 F.3d at 197.  Plaintiff, however, has not put forward any creditable non-medical reason on the part of CMS for the perceived delay in his treatment except for a vague allusion to cost savings, (Compl. ¶ 5), which does not, without more, constitute deliberate indifference.  See Caines v. Hendricks, No. 05-1701, 2007 U.S. Dist. LEXIS 9453, at *21 (D.N.J. Feb. 9, 2007) (citing Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997)).

Giving Plaintiff the benefit of every doubt, the evidence in this case shows, at most, that Defendants may have been negligent for not conducting an MRI and performing surgery sooner than they did.  Negligence however, if it exists and is proven, still does not rise to the level of a constitutional violation.  See Estelle, 429 U.S. at 107; Rouse, 182 F.3d at 197.  Because Plaintiff has failed to make a sufficient showing as to necessary elements of his constitutional claims

against Defendants Donkor and CMS, summary judgment is appropriate. Celotex, 477 U.S. at 322. Further, because the Court grants Defendants summary judgment on Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state breach of contract claim against CMS. See 28 U.S.C. § 1367(c)(3). Thus, Plaintiff's breach of contract claim is dismissed without prejudice to him refiling such claim in state court. See §1367(d).

## CONCLUSION

For the foregoing reasons and for good cause shown,

It is on this 21st day of June, 2007,

**ORDERED** that Defendant Donkor's Motion for Summary Judgment [23] is **GRANTED**; and it is further

**ORDERED** that Defendant CMS's Motion for Summary Judgment [39] is **GRANTED**; and it is further

**ORDERED** that Plaintiff's breach of contract claim is **DISMISSED**.

                                          s/ Anne E. Thompson
                                        ANNE E. THOMPSON, U.S.D.J.